UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

SHANIKA S. HAYES,

      Debtor.

Case No. BG 17-00489

Chapter 7

_____/

**OPINION DENYING DEBTOR'S APPLICATION FOR**
**WAIVER OF CHAPTER 7 FILING FEE**

Appearances:

Travis Thomas Russell, Esq., Grand Rapids, Michigan, attorney for Shanika S. Hayes.

I.      INTRODUCTION.

This matter is before the court on an Application for Waiver of Chapter 7 Filing Fee which was filed by Shanika S. Hayes (the "Debtor") after she failed to comply with a prior court order requiring her to pay her filing fee in installments.[1] The applicable statute, 28 U.S.C. § 1930(f)(1), provides that the court may waive the chapter 7 filing fee for individuals whose income is less than 150 percent of the poverty guidelines and who are unable to pay the filing fee in installments. Although the Debtor's income in this case is below the designated threshold, the Debtor has failed to establish that she is unable to pay her filing fee in installments. Accordingly, for the reasons set forth below, the Debtor's application shall be denied.

---

[1] This failure resulted in entry of an Order to Show Cause Why Case Should Not Be Dismissed for Failure to Pay Filing Fee, which is also currently before the court. As explained in greater detail herein, the show cause order shall also be withdrawn.

1

## II.      JURISDICTION.

The court has jurisdiction over this bankruptcy case.  28 U.S.C. § 1334.  This bankruptcy case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a); L. Civ. R. 83.2(a) (W.D. Mich.).  The matters before the court are statutory core proceedings and this court has constitutional authority to enter a final order. 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate).

## III.      FACTS AND PROCEDURAL HISTORY.

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code[2] on February 6, 2017.  (Dkt. No. 1.)  She is represented in her bankruptcy case by attorney Travis Thomas Russell.  According to the "Disclosure of Compensation for Attorney for Debtor" filed under Bankruptcy Rule 2016(b), the Debtor paid Attorney Russell $959 for legal services prior to the filing of the chapter 7 case.  (Dkt. No. 3.)  Schedules I and J of the Debtor's petition list four dependents, ranging in age from 2 to 15 years old, and state that the Debtor has a monthly net income of $1,878.49[3] and monthly household expenses of $1,794.00.  (Dkt. No. 1.)

On the same date the Debtor filed her petition, she also filed an Application to Pay Filing Fee in Installments.  (Dkt. No. 2.)  The application proposed payment of the $335 filing fee in four (4) installments of $83.75, with the first installment due on March 8, 2017, and the last due on or before June 16, 2017.  (Id.)  In accordance with Local Bankruptcy

---

[2]      The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive.  Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ___."

[3]      The Debtor's Schedule I does not disclose the receipt of any government assistance on line 8f.  (Dkt. No. 1.)

Rule 1006, the Clerk of Court granted the application on the terms proposed by the Debtor.  (Dkt. No. 6.)

The Debtor did not make any of the installment payments required under the court's order.  (See Dkt. No. 16.)  Consequently, the court issued an order requiring the Debtor to appear and show cause why her case should not be dismissed for failure to pay the filing fee.  (Dkt. No. 18.)  At the show cause hearing, which was held before this court on September 19, 2017, the Debtor appeared without Attorney Russell.  The Debtor explained that she did not recall receiving the court's order requiring her to pay the filing fee in installments, despite the fact that it was properly served on the Debtor at her address of record.  More importantly, she stated that Mr. Russell had told her that the filing fee would be waived.  After receiving the subsequent show cause order, the Debtor said she attempted to contact Attorney Russell, but did not hear back from him.  In light of these representations, and because Mr. Russell did not appear, the court adjourned the show cause hearing to October 26, 2017.

On September 28, 2017, Mr. Russell filed an Application for Waiver of Chapter 7 Filing Fee on the Debtor's behalf.  (Dkt. No. 22.)  The Debtor's application lists the same net income, $1,878.49, as was disclosed on her original Schedule I and the same total monthly expenses, $1,794.00, as were identified on her original Schedule J.  (Id.)  The application states, however, that the Debtor's actual income has increased due to a monthly disability payment of $735 that is now being received on behalf of her son.  (Id.)  The application also discloses that the Debtor receives non-cash governmental

3

assistance of $163 per month in the form of food stamps.[4]  (Id.)  The application asserts that some of the Debtor's expenses have also increased:  specifically, the Debtor's rent payment has gone up by $364 per month and the Debtor is now paying $300 per month for child care.  (Id.)

A hearing on the application for waiver of the filing fee was held on October 26, 2017, along with the adjourned show cause hearing.  The Debtor and Attorney Russell both appeared at the hearings, although no testimony or other evidence in support of the Debtor's application was offered.  Arguing in support of the application for waiver, Attorney Russell stated that the Debtor had initially expected to pay the filing fee in installments using funds obtained from her 2016 tax refund, the amount of which was originally scheduled as $6,043.55.[5]  The Debtor received over $6,000 as a tax refund in late February 2017.  According to Mr. Russell, the Debtor was unable to make the installment payments from these funds because of "unexpected household expenses" encountered by the Debtor and her children.  Attorney Russell argued that subsequent changes in the Debtor's financial circumstances, as reflected on the Debtor's application, warranted waiver of the filing fee.  He also represented that the Debtor's food stamp benefits had been reduced from the $163 per month disclosed on the application, to $65 per month.

---

[4]     The Debtor listed these benefits separately on line 3 of her application.  The Debtor did not include the food stamp benefits in her calculation of monthly net income.

[5]     The Debtor subsequently filed amended Schedules A and B, stating the amount of the 2016 tax return as $7,519.00 and claiming the entire amount as exempt.  (Dkt. No. 14.)

With regard to the attorney's fee paid to Mr. Russell, the Debtor explained that she had taken an advance of approximately $1,050 against her 2016 tax refunds prior to filing her case.  She used these funds to pay Mr. Russell's fee of $959.  Mr. Russell acknowledged that this was his typical fee for a no-asset chapter 7 case.

At the conclusion of the hearings, the court took the matters under advisement.

## IV.    DISCUSSION.

A.    *Background and Legal Standards for Waiving the Chapter 7 Filing Fee*.

The current fee for filing a case under chapter 7 of the Bankruptcy Code is $335.[6] Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), individual debtors could request permission to pay bankruptcy filing fees in installments, but the filing fees could not be waived.  BAPCPA added a new subsection (f) to 28 U.S.C. § 1930, and now permits the waiver of an individual debtor's filing fee in certain instances.  Subsection (f)(1) states, in pertinent part:

> Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 673(2) of the Omnibus Budget Reconciliation Act of 1981) applicable to a family of the size involved and is unable to pay that fee in installments . . . .

---

[6]    This total filing fee of $335 is actually comprised of three separate fees that are assessed upon the filing of a chapter 7 case.  An initial filing fee of $245 is imposed under the statute governing bankruptcy fees, 28 U.S.C. § 1930(a)(1)(A).  The statute also permits the Judicial Conference of the United States to "prescribe additional fees."  See 28 U.S.C. § 1930(b).  The additional fees that have been prescribed by the Judicial Conference in accordance with this provision include an administrative fee of $75 and a chapter 7 trustee payment of $15.  See Bankruptcy Court Miscellaneous Fee Schedule, ¶ 8 and ¶ 9.

28 U.S.C. §1930(f)(1).  The purpose of this subsection is to ensure that the door to the bankruptcy court is not closed because an individual lacks the income or other financial resources to pay the fee required for bankruptcy relief.  See generally H.R. Rep. No. 109-31(I), at 18 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 104 (describing BAPCPA's filing fee waiver provisions as being among the "debtor protections" included in the legislation); United States v. Kras, 409 U.S. 434, 457, 93 S. Ct. 631, 644 (1973) (Stewart, J., dissenting) (noting that if payment of filing fees is a requirement for obtaining a bankruptcy discharge, "some of the poor" may be "too poor to even go bankrupt").

In September 2013, the Judicial Conference adopted final procedures "to assist district courts and bankruptcy courts with implementing the fee waiver provisions" set forth in 28 U.S.C. § 1930(f).[7]  The Judicial Conference Procedures mirror the statute by providing that the filing fee may be waived for individual debtors who:  (1) have income less than 150 percent of the income official poverty line applicable to a family of the size involved, and (2) are unable to pay the filing fee in installments.  See Judicial Conference Procedures at § 820.20(a)(1).  The procedures state that the court "should consider the totality of the circumstances in determining whether the debtor is unable to pay the fee in installments."  Id. at § 820.20(a)(4).  The procedures also provide that "[a] debtor may qualify for a waiver of the filing fee even if the debtor has paid or promised to pay a

---

[7]     See Judicial Conference of the United States, Bankruptcy Case Policies & Procedures Adopted Regarding the Chapter 7 Fee Waiver Provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (March 11, 2015), http://www.uscourts.gov/rules-policies/judiciary-policies/bankruptcy-case-policies (referred to herein as "Judicial Conference Procedures").   These final procedures superseded interim procedures that were promulgated by the Judicial Conference in August 2005, soon after BAPCPA's enactment.  Id. at § 820.

bankruptcy attorney, bankruptcy petition preparer, or debt relief agency in connection with the filing." Id. at § 820.20(a)(5).

Applications to waive the filing fee are now commonplace in this district; our Clerk's office estimates that waiver of the filing fee is requested in approximately six percent of all chapter 7 cases filed in the Western District of Michigan. Although the ability to waive the chapter 7 filing fee serves an important function by "facilitat[ing] access to bankruptcy relief for impoverished individuals," filing fee waivers also have a significant ripple effect on the bankruptcy system and its administration. See In re Gjerde, 535 B.R. 329, 332 (Bankr. E.D. Cal. 2015) (describing fee waivers as a "mixed blessing"). In cases where no distribution is made to creditors (so-called "no asset" cases), the filing fee paid by the debtor is the sole source of compensation for the chapter 7 trustee. If the filing fee is paid in such cases, the trustee, who is a private individual, is paid $60 for administering the case – an amount that has not increased since 1994. See 11 U.S.C. § 330(b)(1) & (b)(2)(B). If the filing fee is not paid, the trustee must still administer the case and comply with his or her responsibilities under the Bankruptcy Code, but receives no compensation for this work. Waiver of the filing fee thus "impairs the functioning of the bankruptcy system" by "depriv[ing] the chapter 7 trustees of the $60 from the filing fee that often is their sole source of compensation in a no-asset case, in effect conscripting them to work for free." In re Gjerde, 535 B.R. at 332. Fee waivers also deprive "the courts of fee revenue that Congress counts on to assist in funding the Judicial Branch." Id.

B.      *Application of Legal Standards to the Debtor's Request for Filing Fee Waiver*.

There is no question in this case that the Debtor's monthly income is less than 150 percent of the applicable poverty guidelines;[8] therefore, the sole issue is whether the Debtor is unable to pay the filing fee in installments.  In accordance with the Judicial Conference Procedures, most courts consider the totality of the circumstances in making this determination.  See In re Stickney, 370 B.R. 31, 40 (Bankr. D.N.H. 2007) (explaining that although the totality of circumstances standard set forth in the Judicial Conference Procedures may not be legally binding, it is instructive and has been utilized by nearly all bankruptcy courts that have addressed the issue in published opinions) (citations omitted).  Factors that may be considered in analyzing a debtor's ability to pay the filing fee include:

(1)     discrepancies between a debtor's application and schedules based upon a review of those documents and the debtor's testimony and other pleadings;

(2)     collateral sources of income from family or friends from which the filing fee may be paid;

(3)     excessive or unreasonable expenses that could be directed to the payment of the filing fee;

(4)     whether the debtor agreed to pay a portion of her attorney's fee after the filing of the case;

(5)     whether the debtor has any property from which the filing fee could be paid;

(6)     the debtor's historical spending of disposable income; and

---

8       The 2017 poverty guideline for a family of five in Michigan is $24,600, and 150 percent of this amount is $36,900.  See U.S. Department of Health & Human Services, 2017 Poverty Guidelines (2017), https://aspe.hhs.gov/2017-poverty-guidelines.  The Debtor's annual income of $22,541.88 is well below this level.

(7)     whether the debtor's current or anticipated income or expenses are the result of temporary or extraordinary circumstances.

In re Stickney, 370 B.R. at 41-42 (internal citations omitted).  The Debtor has the burden of proving, by a preponderance of the evidence, that her circumstances satisfy the statutory requirements for waiver of the filing fee.  In re Burr, 344 B.R. 234, 236 (Bankr. W.D.N.Y. 2006).

In this case, the most relevant factors in the totality of circumstances analysis are the Debtor's income and expenses, her receipt of over $6,000 in tax refunds shortly after the filing of her case, and her payment of Mr. Russell's prepetition attorney's fee.

1.     Income and Expenses.

When considering whether an individual debtor is able to pay her filing fee in installments, "a court must naturally look first to the debtor's expenses to determine whether the debtor has the ability to pay the fee out of [her] income."  In re Nuttall, 334 B.R. 921, 924 (Bankr. W.D. Mo. 2005).  Here, the only evidence before the court of the Debtor's income and expenses are the Debtor's schedules and her application to waive the filing fee.  The Debtor's original schedules indicate that, after subtracting expenses, the Debtor had $84.49 of net monthly income from which she could have paid the filing fee in installments.

In her application, and in argument in support of her application at the hearing, the Debtor asserts that postpetition changes in her financial situation warrant a waiver of the filing fee.  However, the Debtor's application, including the additions to income and expenses set forth in paragraphs 3, 4, 5, and 9, does not weigh in support of waiver.  Specifically, the application asserts that the Debtor's household income increased by $735 per month due to a disability payment now being received by her son.  The

9

application also discloses that the Debtor receives $163 per month in food stamps, an amount which was not included in her monthly net income calculation.[9]  According to the application, this additional monthly income is offset by a $364 increase in her monthly rent and $300 per month in new childcare expenses.  At the hearing, counsel for the Debtor also argued that the Debtor's food stamp assistance had decreased from the amount stated on the application to approximately $65 per month.  The changes identified by the Debtor actually result in a net increase in her monthly disposable income from the $84.49 listed in her schedules to $220.49.  This is an additional net disposable income of $136 per month which she could put toward payment of her filing fee.

2.    Tax Refunds.

More importantly, the Debtor had assets at the time her petition was filed that she could have used to pay the filing fee, either in full or in installments.  The Debtor's original Schedule B indicated that she expected to receive $6,043.55 in federal, state, and local income tax refunds for 2016.  She claimed this amount as exempt on her original Schedule C.  According to the Debtor's statements at the hearing, she actually received over $6,000 of this tax refund in late February 2017.  Amended schedules filed by the Debtor in April 2017 indicate that the total amount of the 2016 tax refund was $7,519.00,

---

[9]    For purposes of comparing a debtor's income to the poverty guidelines, the Judicial Conference Procedures specifically state that "[a]mounts received as non-cash government assistance" such as food stamps, "must be deducted from the total amount reported on Schedule I."  Judicial Conference Procedures at § 820.20(a)(2).  The Debtor in this case did not include her food stamp benefits on Schedule I or in the calculation of net income on her application, so no deduction was required.  However, nothing in the procedures prohibits the court from considering the receipt of food stamp benefits as part of the ability to pay analysis.

Even if the court excludes the food stamp benefits from its analysis, the changes identified in the Debtor's application result in a monthly disposable income of $155.49 per month, which is a $71 increase from the amount stated on her Schedules I and J.

which was more than originally estimated.  Upon receipt of the tax refunds, the Debtor had the financial resources available to pay the filing fee, if she had chosen to do so.  See In re Lineberry, 344 B.R. 487, 493 (Bankr. W.D. Va. 2006).

However, instead of paying her filing fee with the proceeds from the tax refunds, counsel for the Debtor argued that the Debtor spent the proceeds on "unanticipated household expenses."  He offered no evidence of what these expenses were and no explanation as to why the Debtor preferred payment of these expenses over payment of her filing fee.  Absent evidence regarding the nature and necessity of these expenses, the court can only conclude that the Debtor had the ability to pay the filing fee with proceeds from her tax refund, but chose not to do so.  In re Lineberry, 344 B.R. at 493 (holding that it is the debtors' burden to show how tax refunds were spent and that they did not have the means to pay their filing fee from the proceeds).

3.      Payment of Attorney's Fees.

In addition, prior to the filing of her bankruptcy case, the Debtor paid Mr. Russell $959 in attorney's fees.  It is well-settled that the prepetition payment of attorney's fees does not *per se* disqualify a debtor from having her filing fee waived.  See In re Stickney, 370 B.R. at 44; Judicial Conference Procedures at § 820.20(a)(5).  Debtors should have the guidance of counsel and the court encourages debtors to retain counsel, even if they are unable to pay the filing fee.  Competent counsel not only assists the debtor, but also the court and the trustee, as Mr. Russell has done in this case.  However, the payment of attorney's fees, or the promise to pay such fees, is among the factors that may be considered by the court in determining whether the debtor is able to pay the filing fee in installments.   In re Nuttall, 334 B.R. at 923 (noting that the Judicial Conference

11

Procedures "do not prohibit the court from considering such payment or promise to pay as a factor" in the ability to pay analysis).

According to the Debtor, she obtained the funds to pay Attorney Russell prepetition by taking an approximately $1,000 advance against her 2016 tax refund. It was not clear from the Debtor's representations at the hearing from whom the advance was received or how (or if) it was repaid. It was clear, however, that the Debtor used her tax refund to leverage $1,000 to pay her attorney and that this reduced the amount she actually received from the approximately $7,500 disclosed on her amended schedules to just over $6,000.

Further, counsel conceded at the hearing that the $959 he received from the Debtor is the amount he typically charges in straightforward chapter 7 cases; he did not agree to reduce his normal fee, as attorneys often do when their clients seek fee waivers. Moreover, there was no evidence that the Debtor sought representation from Legal Aid of Western Michigan, which often represents debtors for no fee, or from another attorney who might reduce his or her fees to represent the Debtor. Last, this was a straightforward no asset case with no complicated turnover, exemption, or discharge concerns that counsel was required to address.

A debtor who chooses to use her meager resources to pay her attorney his full fee and then seeks a waiver her filing fee must demonstrate a reason for this choice. No reason was presented in this simple no-asset case, and no other explanation for the Debtor's choice was offered.

12

4.      Application of the Totality of the Circumstances.

The Debtor in this case had property from which the filing fee could have been paid.  As of the filing of her bankruptcy petition, the Debtor was entitled to a substantial tax refund.  She took an advance against that refund to pay her attorney prepetition, and received the balance of over $6,000 postpetition.  Despite these facts, the Debtor made a conscious choice not to use any of the proceeds from the refund to pay her filing fee. The Debtor offered no evidence for this choice, other than her unsubstantiated claim that unanticipated expenses prevented her from paying the fee.  Finally, the Debtor's own representations about her income and expenses do not support her request for waiver of the filing fee.  The information provided in the Debtor's application suggests that the Debtor has disposable monthly income that could be used to pay her filing fee.  Because the Debtor has failed to establish, under the totality of circumstances, that she is unable to pay her filing fee in installments, her application to waive the filing fee shall be denied.

C.      *Consequences of Denial of the Debtor's Application for Waiver.*

Having denied the Debtor's application to waive the filing fee, and in light of the Debtor's previous failure to comply with the order permitting payment of the fee in installments, the court must next consider the appropriate remedy.  As reflected in the prior order to show cause, nonpayment of the chapter 7 filing fee may constitute "cause" for dismissal of the case.  See 11 U.S.C. § 707(a)(2); In re Gjerde, 535 B.R. 329, 333 (Bankr. E.D. Calif. 2015).  However, the language of § 707(a)(2) is discretionary and "the existence of 'cause' to dismiss a chapter 7 case does not automatically require dismissal." In re Gjerde, 535 B.R. at 333.  As a result, although denial of a request for waiver of the filing fee or failure to pay the fee in installments (and the consequential non-payment of

the fee which results from either) will frequently lead to dismissal of the case, dismissal is not required in all instances.

The Judicial Conference Procedures also afford bankruptcy courts some discretion upon denial of an application to waive the filing fee. They provide that:

> Any order denying a filing fee waiver application may give the debtor a reasonable time in which to either pay the fee in full or begin making installment payments. The order denying the fee waiver application should set forth an installment payment schedule. It also should advise the debtor that failure to pay the fee or make timely installment payments may lead to dismissal of the case . . . .

Judicial Conference Procedures at § 820.20(b)(2).

Similar discretion exists when a debtor fails to make the installment payments required under a court order. Bankruptcy Rule 1006(b)(2) establishes some limits on the court's ability to order installment payments, by restricting the number of permissible installment payments to four (4) and providing that the filing fee must be paid in full within 120 days of filing. The Rule permits this time period to be extended "for cause," but states that the last installment must be paid "not later than 180 days after filing the petition." Fed. R. Bankr. P. 1006(b)(2). However, other than postponing payment of attorney fees pending receipt of all installment payments, Rule 1006 does not impose any consequences for failure to comply with its time limitations. See In re Gjerde, 535 B.R. at 334 (referring to the Rule 1006(b)(2) time limits as a "toothless tiger"). Instead, courts typically deal with tardy installment payments by delaying entry of the discharge or dismissing the case. Id. Although the court is prohibited from entering the discharge until the filing fee is either paid or waived, Fed. R. Bankr. P. 4004(c)(1)(G), it retains discretion

14

to determine whether the failure to pay the filing fee constitutes cause for dismissal of the case under § 707(a)(2).[10]

The court finds that it is appropriate to exercise its discretion in this case. The Debtor has participated in this chapter 7 case in good faith. She has complied with her duties under § 521, attended her § 341 meeting, and the chapter 7 trustee filed a Report of No Distribution, indicating that the estate has been fully administered. No objections to discharge or nondischargeable debt actions have been filed. Almost all aspects of the Debtor's case have been successfully completed; the only remaining impediment to the Debtor receiving a discharge of nearly $30,000 in unsecured debt is payment of her filing fee. See Fed. R. Bankr. P. 4004(c)(1)(G).

Under the circumstances, the court will not dismiss the Debtor's case and will instead simply deny the Application and direct the Clerk to close the case without granting the discharge on June 1, 2018, if the filing fee is not paid prior to that date. In the interim, if the filing fee is paid, presumably all requirements under Bankruptcy Rule 4004(c)(1) will have been satisfied, the discharge may enter, and the case may be closed in the ordinary course.

## V.    CONCLUSION.

Individual chapter 7 debtors, by definition, have little property or income to use on a discretionary basis, and particularly impoverished debtors should not be denied access to bankruptcy relief. However, in cases where waiver of the filing fee is sought, the burden is on the debtor to show that her income is less than 150 percent of the poverty guidelines

---

[10]    The Judicial Conference Procedures also contemplate that requests for waiver of the filing fee may be made, even after an order permitting installment payments has been entered. See Judicial Conference Procedures at § 820.30(b).

and that she is unable to pay the filing fee in installments under the totality of the circumstances. A debtor with significant assets, including the right to receive tax refunds, or a debtor who has used her meager assets to pay non-reduced attorney's fees must be prepared to meet her burden of proof, which may require the introduction of evidence. The Debtor in this case did not produce any such evidence and has failed to meet her burden.

For the foregoing reasons, the Debtor's Application for Waiver of Filing Fee is DENIED. The prior Order to Show Cause regarding dismissal of the case is WITHDRAWN. The case will remain open until June 1, 2018, at which time it will be closed without entry of the discharge if the filing fee remains unpaid. A separate order shall be entered accordingly.

**IT IS SO ORDERED.**

Dated March 9, 2018



James W. Boyd
United States Bankruptcy Judge